**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEFAN WOOD, | : | |
| | : | Civil Action No. 06-3337 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHARLES SAMUELS, JR., | : | |
| Warden, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

Petitioner pro se                        Counsel for Respondent
Stefan Wood                              J. Andrew Ruymann
F.C.I. Fort Dix                          Assistant U.S. Attorney
P.O. Box 7000                            402 East State Street
Fort Dix, NJ 08640                       Room 430
                                         Trenton, NJ 08608

**KUGLER**, District Judge

     Petitioner Stefan Wood, a prisoner currently confined at the

Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for writ of habeas corpus, pursuant to 28

U.S.C. § 2241,[1] challenging a prison disciplinary proceeding.

The sole respondent is Warden Charles Samuels, Jr.

------------------------------------------

     [1] United States Code Title 28, Section 2241, provides in
pertinent part:
          (a) Writs of habeas corpus may be granted by
          the ... district courts ... within their
          respective jurisdictions ...
          (c) The writ of habeas corpus shall not
          extend to a prisoner unless- ... (3) He is in
          custody in violation of the Constitution or
          laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I.  <u>BACKGROUND</u>

On May 20, 1998, Petitioner was sentenced in the U.S. District Court for the Eastern District of Pennsylvania to a term of imprisonment of 135 months, to be followed by a five-year term of supervised release, upon his conviction for conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. Petitioner's projected release date, via good conduct time, is August 8, 2007.

On February 12, 2002, Petitioner was placed in Administrative Detention "pending investigation of a violation of Bureau regulations."  The Administrative Detention Order indicated that the investigation was for "unauthorized use of the telephone."  (Petition, Ex. E.)

On March 11, 2002, Intelligence Officer Tracy Springman, who was reviewing tapes of Petitioner's telephone calls, became aware that Petitioner had used the word "jawn" several times during a telephone call on January 7, 2002.  Incident Report Number 972085 was prepared and delivered to Petitioner that day.  (Petition, Ex. A.)  The Incident Report charged Petitioner with a violation of Prohibited Act Code 297, "Use of the phone for other than criminal activity; talking in code."  <u>See</u>, <u>e.g.</u>, 28 C.F.R.

§ 541.13, Table 3 - Prohibited Acts and Disciplinary Severity

Code.  Specifically, the Incident Report stated:

> On this date and time Investigation concluded that
> Inmate Wood used coded language in his telephone
> conversations, specifically coded words directly noted
> in his PSA.  On 01-07-02, Inmate Wood placed a call ...
> .  Inmate Wood used the word "jawn" several times
> during this conversation.  Inmate Wood stated, "I'm
> pressing it now, no loot though until he give you both
> of them, especially her jawn - a big jawn.  Her little
> jawn I'm not trying to hit it mainly her big jawn.
> Don't give up no loot until you get the big jawn."
> Inmate Wood's PSI contains the following in his offense
> conduct: "Co-conspirators customarily tried to conceal
> their drug distribution activities from law enforcement
> by using coded and cryptic language during drug related
> conversations.  For example, one of many code words for
> cocaine was "jawns."

(Petition, Ex. A.)[2]  At a hearing on March 13, 2002, Petitioner

responded that "The word jawn is a thing.  It could be any type

of thing like jewelry."  The Unit Disciplinary Committee referred

the charge to the Disciplinary Hearing Officer for further

proceedings.

The DHO hearing was held April 9, 2002.  (Petition, Ex. C.)

Petitioner stated that the word "jawn" is a Philadelphia slang

term and that he was referring to a jewelry transaction, not a

drug transaction.  Petitioner's characterization of the word

"jawn" as a Philadelphia slang term with many meanings was

---

[2] Because it and certain exhibits refer to the confidential
Pre-Sentence Investigation Report ("PSI"), the Answer and
exhibits have been filed under seal.  This Court has determined
that any information from the PSI recited in this Opinion is
relevant and appropriate for inclusion.

corroborated by staff representative Lt. Brumfield.  Other evidence regarding the jewelry transaction and the PSI was presented.  The DHO concluded that Petitioner had committed the charged act and imposed sanctions including the loss of 27 days good conduct time.

Petitioner pursued his administrative remedies, asserting that characterizing the slang word "jawn" as a "code" word violated his free speech rights and was racially biased and that the sanction was overly broad because it restricted his access to his attorney.  (Petition, Ex. D.)  Petitioner's administrative appeals were denied.

Here, Petitioner contends (1) that Program Statement 5264.07 is invalid because it was not promulgated pursuant to the Notice and Comment provisions of the Administrative Procedure Act, and (2) that he was denied due process by being placed in Administrative Detention and referred for an investigation before an incident report was prepared.  (Petition, ¶ 10(a), (b); Memorandum of Points and Authorities at 6-10.)

Respondent has answered that the Petition should be dismissed as unexhausted and that, in any event, Petitioner's claims are meritless.

In his Reply [7], Petitioner concedes that he has not exhausted his administrative remedies, but argues that exhaustion would be futile.  Petitioner also argues that the challenged rule

violates both the First Amendment and the Equal Protection
Clauses of the Fifth and Fourteenth Amendments by punishing
prisoners for speaking in African-American slang.  As Petitioner
raised this claim for the first time in his Reply brief, this
Court will not consider it.  See, e.g., Comm. of Pennsylvania ex
rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)
("the legal theories set forth in [Plaintiff's] brief are helpful
only to the extent that they find support in the allegations set
forth in the complaint. '[I]t is axiomatic that the complaint may
not be amended by the briefs in opposition to a motion to
dismiss.'") (quoting Car Carriers, Inc. v. Ford Motor Co., 745
F.2d 1101, 1107 (7th Cir.), cert. denied, 470 U.S. 1054 (1984));
Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert.
denied, 514 U.S. 1026 (1995) ("A Traverse is not the proper
pleading to raise additional grounds for relief.").

## II.  LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading
requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994).  A
petition must "specify all the grounds for relief" and must set
forth "facts supporting each of the grounds thus specified." See
Rule 2(c) of the Rules Governing § 2254 Cases in the U.S.
District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made
applicable to § 2241 petitions through Rule 1(b) of the Habeas
Rules.

5

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III.  ANALYSIS

A.  Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997).  See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005).

B.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted

all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

7

Petitioner admits that he has not exhausted the administrative remedies[3] available to him with respect to the claims raised in the Petition, but asserts that exhaustion would be futile.

This Court is not persuaded that exhaustion would be futile. In any event, Petitioner's claims are meritless.

C.   Petitioner's Claims

    1.   The APA Claim

Petitioner contends that Program Statement 5264.07 is invalid because it was not promulgated in compliance with the notice and comment provisions of the Administrative Procedure Act.

_____

    [3] The BOP Administrative Remedy Program is a three-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

The Administrative Procedure Act, 5 U.S.C. § 551 et seq., prescribes the manner in which agencies of the United States government may promulgate rules.  In general, pursuant to § 553, notice of proposed rule making shall be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and shall contain either the terms or substance of the proposed rule or a description of the subjects and issues involved.  After notice is published, the agency shall give interested persons an opportunity to participate in the rule making through submission of data, views, or arguments.  After consideration of the matter presented, the agency shall incorporate in the final rules a concise general statement of their basis and purpose.  This "notice-and-comment" procedure "does not apply - (A) to interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b).

> "Legislative" rules that impose new duties upon the regulated party have the force and effect of law and must be promulgated in accordance with the proper procedures under the Administrative Procedures Act (APA).  The APA requires also that general notice of the proposed regulation be published in the Federal Register and interested persons be given an opportunity to comment on the proposed rule.  "Interpretive" rules, on the other hand, seek only to interpret language already in properly issued regulations.  If the agency is not adding or amending language to the regulation, the rules are interpretive.  Interpretive, or "procedural," rules do not themselves shift the rights or interests of the parties, although they may change the way in which the parties present themselves to the agency.  Interpretive or procedural rules and

9

> statements of policy are exempted from the notice and
> comment requirement.

Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003) (citations

omitted).

Pursuant to 18 U.S.C. § 3624(b), an inmate serving a term of

imprisonment of more than one year but less than life is eligible

to receive 54 days good conduct time credit each year,

"subject to determination by the Bureau of Prisons that, during

that year, the prisoner has displayed exemplary compliance with

institutional disciplinary regulations."  Pursuant to § 3624(b),

the notice-and-comment procedures of the Administrative Procedure

Act, and other relevant statutes, the Bureau of Prisons has

promulgated regulations reflecting its determination to extend

telephone privileges to inmates as part of its overall

correctional management and to permit restrictions on inmate

telephone use to be imposed as a disciplinary sanction.  See,

e.g., 28 C.F.R. §§ 540.100 (Telephone Regulations for Inmates),

541.13 (Prohibited Acts and Disciplinary Severity Scale); 65

Fed.Reg. 59724, 2000 WL 1475385 (October 6, 2000); 64 Fed.Reg.

9432 (Feb. 25, 1999); 53 Fed.Reg. 15540-01, 1988 WL 271069 (April

29, 1988).[4]  Section 541.13 identifies certain prohibited acts,

---

[4] Petitioner does not allege that the regulations published
at 28 C.F.R. §§ 540.100 and 541.13 were not promulgated in
compliance with the notice-and-comment requirements of the APA.
The Federal Register entries cited above reflect the relevant
notice-and-comment history of § 541.13.

assigns to each prohibited act a severity category, and sets forth the sanctions which may or shall be imposed for each type of violation.  See 28 C.F.R. § 541.13, Tables 3, 4.  Code 297, "Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls, conference calling; talking in code)," is a "High" category offense for which the stated sanctions include disallowance of a minimum of 27 days' good conduct time, the sanction imposed and challenged here.

Bureau of Prisons Program Statement 5264.07, "Telephone Regulations for Inmates" (Jan. 31, 2002), refers to 28 C.F.R. §§ 540.100 and 541, interprets those regulations, and provides guidance to BOP personnel as to their implementation and effect. For example, the Program Statement provides that the BOP extends telephone privileges to inmates as part of its overall correctional management, that the Warden shall establish procedures that enable monitoring of telephone conversations and shall provide notice to the inmate of the potential for monitoring, and that restrictions on inmate telephone use may be imposed as a disciplinary sanction.  P.S. 5264.07 ¶¶ 1(a), 11. Nowhere does the Program Statement purport to define the prohibited act at issue here, "talking in code," or to establish

11

the disciplinary hearing procedure to be employed when a violation is charged.

Insofar as it is relevant to Petitioner's claim, the Program Statement merely interprets language already contained in properly promulgated regulations contained in the Code of Federal Regulations.  There is no violation of the Administrative Procedure Act here.  Petitioner is not entitled to relief on this claim.

2.   <u>The Administrative Detention Claim</u>

Petitioner asserts that he was deprived of due process by being placed in Administrative Detention pending investigation and before issuance of the Incident Report.

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Wilwording v. Swenson</u>, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  <u>Wolff</u>, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[5] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

_____

[5] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[6] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings.  Id. at 569-70.  Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member.  Id. at 570.

----

[6] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing.  See Ponte v. Real, 471 U.S. 491 (1985).  "{P}rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners."  Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill</u>, 472 U.S. 445, 454-56 (1985).[7]

Petitioner does not allege that he was deprived of any of these aspects of due process.  Nor was he.  Instead, Petitioner contends that it was a violation of due process for him to be placed in Administrative Detention from February 12, 2002, to March 11, 2002, a period of less than one month, during which time an investigation was conducted which led to the issuance of the Incident Report.

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976), <u>quoted in</u> <u>Hewitt</u>, 459 U.S. at 468 and <u>Sandin v. Conner</u>, 515 U.S. 472, 480 (1995).  <u>Cf</u>. <u>Washington v. Harper</u>, 494

---

[7] The due process requirements of <u>Wolff</u>, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. <u>See</u>, <u>e.g.</u>, 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

Governments also may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest).  See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).  In Griffin v.

16

<u>Vaughn</u>, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge.  The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.   <u>Id.</u>

Contrary to Petitioner's contention, nothing in 28 C.F.R. § 541.14, "Incident Report and Investigation," confers on him a liberty interest in avoiding Administrative Detention until such time as an Incident Report is issued nor prohibits the Bureau of Prisons from confining Petitioner in administrative detention pending an investigation of a violation of regulations.  To the contrary, a companion regulation, 28 C.F.R. § 541.22, "Administrative Detention," explicitly provides that an inmate may be placed in Administrative Detention "when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate ... [i]s pending an investigation of a violation of Bureau

regulations."  28 C.F.R. 541.22(a)(2).  As the Administrative

Detention Order attached as Exhibit E to the Petition

demonstrates, Petitioner was properly placed in administrative

detention pursuant to § 541.22(a)(2).

Moreover, Petitioner alleges no conditions of confinement in

Administrative Detention that suggest that such confinement

presented an "atypical and significant hardship."  Accordingly,

Petitioner has failed to establish any deprivation of his due

process rights.  Petitioner is not entitled to relief on this

claim.

IV.  CONCLUSION

For the reasons set forth above, the Petition will be

denied.  An appropriate order follows.



                                   S/Robert B. Kugler
                                   Robert B. Kugler
                                   United States District Judge

Dated: April 18, 2007


18